UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:23-CR-59 JD |
| MARSALIUS WILLIAMS | |

## OPINION AND ORDER

The defendant, Marsalius Williams, is charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Mr. Williams has moved to dismiss this charge, alleging the statute is unconstitutional in light of the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*. 597 U.S. 1 (2022). (DE 21.) The motion is fully briefed and ripe for adjudication. For the following reasons, the motion is denied.

**A. Legal Standard**

A defendant can move before trial to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B). A defendant can make such a motion on the basis that the charged offense is based on an unconstitutional statute. *United States v. Posey*, 655 F.Supp.3d 762, 766 (N.D. Ind. 2023) (internal citations omitted). A constitutional challenge to a statute can be brought either as a facial challenge, or an as-applied challenge. Mr. Williams brings both a facial and an as-applied challenge. To succeed on a facial challenge, the moving party must show that the statute is unconstitutional in all applications. *City of L.A. v. Patel*, 576 U.S. 409, 415, 418 (2015). To succeed on an as-applied challenge, the moving party must show it is unconstitutional because of the way it was applied to the particular facts of their case. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

**B. Discussion**

This Court has previously considered and rejected a challenge to the constitutionality of § 922(g)(1) based on *Bruen*, and it sees no reason to revisit that conclusion beyond recent developments. *United States v. Rice*, 662 F.Supp.3d 935 (N.D. Ind. 2023). In *Rice*, this Court found that § 922(g)(1) satisfies the *Bruen* test and withstood both facial and as-applied challenges. *Id.* That is, the Court found that the regulation codified at § 922(g)(1) is consistent with the history and tradition of firearm regulation in the United States.[1] *Id.* This conclusion is shared by the overwhelming majority of federal courts to review this question, including a thus far unanimous consensus among the Judges of this District who have confronted the question. *See, e.g.*, *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) (upholding § 922(g)(1) as constitutional); *Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023) (finding *Bruen* did not abrogate 10th Circuit precedent upholding the constitutionality of § 922(g)(1) under the Second Amendment as applied to both violent and non-violent felons); *United States v. Dubois*, No. 22-10829, 2024 WL 927030 (11th Cir. Mar. 5, 2024) (reaching the same conclusion as *Vincent v. Garland*); *United States v. Regalado*, No. 3:23-CR-42, 2023 WL 9054039 (N.D. Ind. Dec. 20, 2023) (Leichty, J.); *United States v. Tribble*, No. 2:22-CR-85, 2023 WL 2455978 (N.D. Ind. Mar. 10, 2023) (Simon, J.); *United States v. Clark*, No. 1:20-CR-49, 2023 WL 2346284 (N.D. Ind. Mar. 2, 2023) (Brady, C.J.).

Since deciding *Rice* last year, the Court has received several requests to reconsider its holding in light of "new" developments in *Bruen* caselaw. The Court has considered each request

---

[1] In the interest of brevity, the Court will not restate the full analysis or the *Bruen* standard here and incorporates by reference the analysis and holding of *Rice*.

2

as they came, reviewed the decisions of its sister courts, and found no basis to revisit the conclusion of *Rice*. *United States v. Young*, No. 2:22-CR-20, 2023 WL 8697936 (N.D. Ind. Dec. 15, 2023) (collecting cases and summarizing their holdings). While the majority of the caselaw offered by Mr. Williams has been considered and declined by the Court before, he does offer one new case in his motion, *United States v. Neal* from the Northern District of Illinois. No. 20-CR-335, 2024 WL 833607 (N.D. Ill. Feb. 7, 2024).

*Neal* relied on cases interpreting *Bruen* which this Court has already considered and found to be unpersuasive. Notably, *Range v. Attorney General* from the Third Circuit and *United States v. Bullock* from the Southern District of Mississippi. *Range v. Attorney General*, 69 F.4th 96, 106 (3d Cir. 2023) (en banc); *United States v. Bullock*, No. 3:18-CR-165, 2023 WL 4232309 (S.D. Miss. June 28, 2023); *see United States v. Wade,* No. 3:22-CR-3, 2023 WL 6037404 (N.D. Ind. Sept. 15, 2023) (reaffirming *Rice* after considering *Range* and *Bullock*), as well as *United States v. Prince*, which this Court previously addressed. *United States v. Prince*, No. 1:22-CR-240, 2023 WL 7220127 (N.D. Ill. Nov. 2, 2023); *see United States v. Sherls*, No. 2:22-CR-13, 2023 WL 8185665 (N.D. Ind. Nov. 27, 2023) (reaffirming *Rice* in light of *Prince*). Therefore, the Court sees no reason to disturb the holding of *Rice* and its progeny.

However, the Court recognizes that Second Amendment history is very much subject to interpretation and would agree with the comment in *Neal*, echoing several sister courts from across the country about the difficulty of the task. *Neal*, 2024 WL 833607 at *4 (internal citations omitted). *Bruen* has thrust federal district judges into the unfamiliar role of historians and in a field which is not particularly well developed. *See id.* (citing pre-*Bruen* Seventh Circuit precedent on the difficulty of the historical question posed and disagreement among scholars).

3

Perhaps *Bruen* will generate a new interest in this underdeveloped field of history and produce a more expansive body of knowledge that can be applied by judges.

Turning back to the particular issue at hand, the Court would offer one illustration about how its approach with the *Bruen* question led to a position contrary to *Neal*. In *Neal*, the court adopted the defendant's interpretation that § 922(g)(1) addresses the societal function of "combatting crime and recidivism" instead of, the Government's interpretation, that its purpose is "disarming individuals who, like felons, [were] untrustworthy adherents to the rule of law." 2024 WL 833607, at *7–8. This is relevant because in *Bruen*, the Supreme Court noted that if a challenged regulation dealt with a societal problem that had persisted since the 18th century, but earlier generations addressed the same societal problem[2] through "materially different means" than modern governments, that "could also be evidence that modern regulation is unconstitutional." *Bruen*, 597 U.S. at 26–27.

*Neal* viewed this as fatal to the Government's position that § 922(g)(1) was "*distinctly similar*" to early American regulations which categorically disarmed persons, such as loyalists to the British Crown, based on their untrustworthiness to bear arms or potential dangerousness if allowed to possess arms.[3] In particular, *Neal* found that because the Founders were familiar with the issues of crime and recidivism but did not impose categorical bans on *felons* possessing firearms, even if they categorically banned other groups from bearing arms, they chose to

---

[2] In *Neal*, even though the parties disagreed on the exact societal problem § 922(g)(1) targets, they agreed that § 922(g)(1) addresses a societal problem which has been present since the 18th century. The Court will note there is some dispute about this question. *See United States v. Sherls*, No. 2:22-CR-13, 2023 WL 8185665, at *4 n.10 (N.D. Ind. Nov. 27, 2023) (noting some disagreement among courts about the question.)

[3] The Court has previously commented on the opaqueness of the "distinctly similar" standard mentioned in *Bruen* relative to the more clearly articulated "relevantly similar" standard. *Sherls*, 2023 WL at *4, *4 n.9.

address the societal problem of crime through different means.[4] 2024 WL 833607 at *7–8. In turn, *Neal* concluded this is strong evidence that § 922(g)(1) is unconstitutional. *Id.*

But there is an alternative view which this and many other courts have adopted. The fundamental characteristic defining someone as a criminal is the fact they did not adhere to the rule of law. So then, there is no reason to distinguish criminals from the broader group of those who are untrustworthy adherents to the rule of law or gradate such subgroups' protections under the Second Amendment. The Court recognizes it is possible that the Founders gradated the Second Amendment rights of untrustworthy adherents to the rule of law based on the nature of their untrustworthiness, creating subcategories about who were more untrustworthy and thus subject to more restrictions. In the Court's view, however, that is not the most persuasive interpretation for understanding the modern constraints of the Second Amendment.

As context, it is important to remember that a list of laws that *happened* to exist at the time of the Founding is not the same thing as an exhaustive account of what laws would have been *believed to be permissible* by an individual sharing the original public understanding of the constitution. *Rice*, 662 F.Supp.3d at 939 n.3 (citing *United States v. Kelly*, No. 3:22-CR-037, 2022 WL 17336578, at *2 (M.D. Tenn. Nov. 16, 2022). No one would assume that our modern legislatures have enacted every single hypothetical law capable of comporting with the Constitution. *Kelly*, 2022 WL 17336578 at *2. Likewise, it is unreasonable to assume historical legislatures would have done such a thing.

---

[4] The Court is also concerned about interpreting the "distinctly similar" standard, such as it might be, as a requirement for a historical twin. If the Supreme Court had sought to limit modern legislatures, addressing long standing social problems, to only enacting laws identical to those which existed in the 18th Century, it could have said that. At most, they said there must be a "distinctly similar" regulation while simultaneously disclaiming that they were requiring the production of a historical twin. *Bruen*, 597 U.S. at 30.

Consequently, the Court questions the inference that the Founders' choice to disarm one subcategory of a larger group of untrustworthy adherents to the rule of law, but not another subcategory, was because of their belief disarming the latter subcategory would violate the prevailing public understanding of the Second Amendment. Put another way, if the Founders' disarmed one subcategory of persons on the basis of being untrustworthy adherents to the rule of law but not another, it is not apparent they made this choice because they viewed disarming the latter group as beyond their constitutional power.[5] As alluded to earlier, the Court believes the regulation is consistent with the history and tradition of firearms regulation in the United States but recognizes that conclusion is very much subject to historical interpretation. *See Rice*, 662 F.Supp.3d at 946–48.

Accordingly, Mr. Williams' motion to dismiss the indictment is DENIED. (DE 21.)

SO ORDERED.

ENTERED: April 9, 2024

                                                /s/ JON E. DEGUILIO
                                                Judge
                                                United States District Court

---

[5] Particularly given the potential legislative motives for not doing something, such as cost benefit analysis, deciding broad disarmament of felons may not have been a priority given relative crime rates of the period, competing legislative priorities displacing felon firearm regulation from the legislative agenda, or even simple legislative inertia.